IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

ANTHONY CLARK,

        Plaintiff,

vs.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

        Defendant.

No. C09-0176

RULING ON JUDICIAL REVIEW

_____

## TABLE OF CONTENTS

I.     *INTRODUCTION*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II.    *PROCEDURAL BACKGROUND*. . . . . . . . . . . . . . . . . . . . . . . 2

III.   *PRINCIPLES OF REVIEW*. . . . . . . . . . . . . . . . . . . . . . . . . . 3

IV.   *FACTS*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
      A.    *Clark's Education and Employment Background*. . . . . . . . . . . . 4
      B.    *Administrative Hearing Testimony*. . . . . . . . . . . . . . . . . . . 5
           1.    *Clark's Testimony*. . . . . . . . . . . . . . . . . . . . . . . . . 5
           2.    *Vocational Expert's Testimony*. . . . . . . . . . . . . . . . . 6
      C.    *Clark's Medical History*. . . . . . . . . . . . . . . . . . . . . . . . 7

V.    *CONCLUSIONS OF LAW*. . . . . . . . . . . . . . . . . . . . . . . . . . 10
      A.    *ALJ's Disability Determination*. . . . . . . . . . . . . . . . . . . 10
      B.    *Objections Raised by Claimant*. . . . . . . . . . . . . . . . . . . 12
           1.    *Listing § 4.02*. . . . . . . . . . . . . . . . . . . . . . . . . . . 13
           2.    *Dr. Noreuil's Opinions*. . . . . . . . . . . . . . . . . . . . . 15
           3.    *RFC Assessment*. . . . . . . . . . . . . . . . . . . . . . . . . 17

VI.   *CONCLUSION*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

VII.  *ORDER*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

# I. INTRODUCTION

This matter comes before the Court on the Complaint (docket number 3) filed by Plaintiff Anthony Clark on December 8, 2009, requesting judicial review of the Social Security Commissioner's decision to deny his application for Title II disability insurance benefits. Clark asks the Court to reverse the decision of the Social Security Commissioner ("Commissioner") and order the Commissioner to provide him disability insurance benefits. In the alternative, Clark requests the Court to remand this matter for further proceedings.

# II. PROCEDURAL BACKGROUND

On March 16, 2007, Clark applied for disability insurance benefits. In his application, Clark alleged an inability to work since February 14, 2007 due to congestive heart failure, arrhythmia, and the effects of a cardiac implant. Clark's application was denied on June 21, 2007. On October 22, 2007, Clark's application was denied on reconsideration. On November 28, 2007, Clark requested an administrative hearing before an Administrative Law Judge ("ALJ"). On March 4, 2009, Clark appeared via video conference with his attorney before ALJ Marilyn P. Hamilton for an administrative hearing. Clark and vocational expert Julie A. Svec testified at the hearing. In a decision dated April 1, 2009, the ALJ denied Clark's claims. The ALJ determined that Clark was not disabled and not entitled to disability insurance benefits because he was functionally capable of performing his past relevant work as a telemarketer and a tape verifier. Clark appealed the ALJ's decision. On October 7, 2009, the Appeals Council denied Clark's request for review. Consequently, the ALJ's April 1, 2009 decision was adopted as the Commissioner's final decision.

On December 8, 2009, Clark filed this action for judicial review. The Commissioner filed an Answer on June 16, 2010. On August 24, 2010, Clark filed a brief arguing that there is not substantial evidence in the record to support the ALJ's finding that he is not disabled and that he could perform his past relevant work as a telemarketer or a

2

tape verifier. On October 19, 2010, the Commissioner filed a responsive brief arguing that the ALJ's decision was correct and asking the Court to affirm the ALJ's decision. On September 15, 2010, both parties consented to proceed before a magistrate judge in this matter pursuant to the provisions set forth in 28 U.S.C. § 636(c).

### III. PRINCIPLES OF REVIEW

Title 42, United States Code, Section 405(g) provides that the Commissioner's final determination following an administrative hearing not to award disability insurance benefits is subject to judicial review. 42 U.S.C. § 405(g). Pursuant to 42 U.S.C. § 405(g), the Court has the power to: "[E]nter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner . . . with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . ." *Id.*

The Court will "affirm the ALJ's decision if it is supported by substantial evidence on the record as a whole." *Gates v. Astrue*, 627 F.3d 1080, 1082 (8th Cir. 2010) (citation omitted). Evidence is "substantial evidence" if a reasonable person would find it adequate to support the ALJ's determination. *Id.* (citing *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005)); *see also Wildman v. Astrue*, 596 F.3d 959, 963-64 (8th Cir. 2010) ("'Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion.' *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000).").

In determining whether the ALJ's decision meets this standard, the Court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005) (citation omitted). The Court not only considers the evidence which supports the ALJ's decision, but also the evidence that detracts from his or her decision. *Moore v. Astrue*, 623 F.3d 599, 602 (8th Cir. 2010); *see also Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007) (Review of an ALJ's decision "extends beyond examining the record to find substantial evidence in support of the ALJ's

3

decision; [the court must also] consider evidence in the record that fairly detracts from that decision."). In *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994), the Eighth Circuit Court of Appeals explained this standard as follows:

> This standard is 'something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal.'

*Id.* (quoting *Turley v. Sullivan*, 939 F.2d 524, 528 (8th Cir. 1991), in turn quoting *Bland v. Bowen*, 861 F.2d 533, 535 (8th Cir. 1988)). In *Casey v. Astrue*, 503 F.3d 687 (8th Cir. 2007), the Eighth Circuit further explained that a court "will not disturb the denial of benefits so long as the ALJ's decision falls within the available 'zone of choice.'" *Id.* at 691 (citations omitted). "A decision is not outside that 'zone of choice' simply because [a court] may have reached a different conclusion had [the court] been the fact finder in the first instance." *Hacker v. Barnhart*, 459 F.3d 934, 936 (8th Cir. 2006). Therefore, "even if inconsistent conclusions may be drawn from the evidence, the agency's decision will be upheld if it is supported by substantial evidence on the record as a whole." *Guilliams*, 393 F.3d at 801 (citing *Chamberlain v. Shalala*, 47 F.3d 1489, 1493 (8th Cir. 1995)); *see also Wildman*, 596 F.3d at 964 ("If substantial evidence supports the ALJ's decision, we will not reverse the decision merely because substantial evidence would have also supported a contrary outcome, or because we would have decided differently."); *Moore v. Astrue*, 572 F.3d 520, 522 (8th Cir. 2009) ("'If there is substantial evidence to support the Commissioner's conclusion, we may not reverse even though there may also be substantial evidence to support the opposite conclusion.' *Clay v. Barnhart*, 417 F.3d 922, 928 (8th Cir. 2005).").

## IV. FACTS

### A. Clark's Education and Employment Background

Clark was born in 1959. He graduated from high school. At the time of the hearing, Clark was taking liberal arts classes at Kirkwood Community College. Clark

testified that he had no difficulty reading, writing, speaking, or understanding the English language.

The record contains a detailed earnings report for Clark. The report covers Clark's employment history from 1990 to 2007. According to the report, from 1990 to 2006, Clark earned between $3,891.08 (1991) and $21,255.69 (2003). In 2007, he earned $1,148.66.

## B. Administrative Hearing Testimony

### 1. Clark's Testimony

At the administrative hearing, the ALJ questioned Clark about his ability to concentrate and remember things. Clark testified that he loses concentration when he is fatigued. According to Clark, when he is feeling fatigued, he stops what he is doing, and "does something as relaxing as possible[,] including a nap."[1]

The ALJ also asked Clark to describe his daily activities:

> I get up at five, four days out of five. I'm on campus by 7:15. My first class is at eight. I usually do some studying before the first class. My first class is a math class, so after I get out of that, I might do a little homework, chill out for about 10/15 minutes before my next class, which is biology. Then I have a two-hour window. If I feel up to it, I'll try to do some reading and some homework. I've also been known to go to the library and take a nap. Then I go[] to my last class, which is religion, and then after that I come home. And if I got anything left in the gas tank, I'll do some more studying, but that's not a real habit at least this semester.

(Administrative Record at 35.) In addition, Clark indicated that he generally does not do laundry or housework. He further indicated that he rarely cooks, except for heating up food in the microwave. He testified that his family performs most of the laundry, housework, and cooking.

---

[1] *See* Administrative Record at 35.

Clark's attorney also questioned Clark at the hearing. Clark's attorney asked Clark whether his heart problems affected his stamina. Clark responded that he gets fatigued, and generally takes a daily 20 to 30 minute nap. Clark also stated that he gets short of breath when his pacemaker kicks in.

Clark's attorney asked Clark to compare his ability to go to school with the ability to work a full-time job:

> Q:  Does -- you seem to be somewhat active, but you're also taking all these classes. Is there -- is the stress in the classes different from stress from working in your mind?
>
> A:  Well, yeah, every class I've taken there's always been some type of breaks somewhere during the day, one of about at least 50 minutes. A regular gig -- I've yet to have a gig where I can just take a break. . . .
>
> Q:  Do you think you'd have the stamina now to go back and do any full-time work eight hours a day, five days a week?
>
> A:  No.
>
> Q:  What do you --
>
> A:  I don't think my concentration could take it. I don't think I physically could take it. If they let me lay down for about 30 to 45 minutes, I could possibly do it, but I don't see that happening.

(Administrative Record at 44-46.)

### 2.  *Vocational Expert's Testimony*

At the hearing, the ALJ provided vocational expert Julie A. Svec with a hypothetical for an individual who is able to perform a sedentary job, but:

> should never climb ropes, ladders or scaffolds, only occasionally climb ramps, stairs or balance, stoop, kneel, crouch or crawl. This person is limited in over the shoulder reaching to occasionally with the right hand and the person is right hand dominant; no other limitations in reaching, however. The person should avoid even moderate exposure to hazards such as moving machinery, unguarded heights and to vibrations. The person should avoid concentrated exposure to

<blockquote>extreme cold and extreme heat. There should be no driving as a requirement of the job.</blockquote>

(Administrative Record at 53.) The vocational expert testified that under such limitations, Clark could perform his past relevant work as a telemarketer or a tape verifier.

Clark's attorney also questioned the vocational expert. Clark's attorney inquired whether a person who worked at a "really slow pace" up to one-third of the workday, would be employable. The vocational expert testified that under such a limitation, Clark would not be employable. Clark's attorney also asked the vocational expert whether an individual who needed a 30 minute break after every hour of working would be able to find competitive employment. The vocational expert testified that such a limitation would preclude competitive employment.

### C. Clark's Medical History

On February 14, 2007, Clark suffered a cardiac arrest while in his car at an intersection. He was taken to the emergency room at Mercy Medical Center in Cedar Rapids, Iowa. In the emergency room, Clark was given advanced cardiac life support, stabilized, and placed in the intensive care unit. Dr. Donald E. Paynter, M.D., opined that Clark's cardiac arrest was due to an underlying cardiomyopathy. Tests showed severe left ventricular dysfunction with an ejection fraction of 20%. Dr. Todd T. Langager, M.D., opined that Clark met the criteria for implantable cardioverter-defibrillator ("ICD") therapy.[2] Clark underwent ICD placement on February 20, 2007.

On May 14, 2007, in response to questions from the Social Security Administration, Clark's counselor, Bruce D. Williams, L.M.H.C., L.M.S.W., reported that Clark's "heart condition has either created or exacerbated a general depression that seems to be affecting

---

[2] An implantable cardioverter-defibrillator is a "small battery-powered electrical impulse generator which is implanted in patients who are at risk of sudden cardiac death due to ventricular fibrillation and ventricular tachycardia. The device is programmed to detect cardiac arrhythmia and correct it by delivering a jolt of electricity." *See* http://en.wikipedia.org/wiki/Implantable_cardioverter-defibrillator

his overall outlook, including judgment."[3] Williams opined that Clark was capable of remembering and understanding instructions, procedures, and locations. Williams further opined that while Clark is generally able to carry out instructions, maintain attention, concentration, and pace, his "concentration has been compromised by his heart condition[.] . . . I sense a general preoccupation regarding his health and the future . . . [making] his pace seem slower[.]"[4] Williams concluded that Clark "is a sensitive, intelligent man whose health was greatly impacted when his heart stopped in February of 2007 . . . [d]iscouragement and depression have followed, to say nothing of physical limitations."[5]

On June 6, 2007, Dr. Lawrence Staples, M.D., reviewed Clark's medical records and provided Disability Determination Services ("DDS") with a physical residual functional capacity ("RFC") assessment for Clark. Dr. Staples determined that Clark could: (1) occasionally lift and/or carry 10 pounds, (2) frequently lift and/or carry 10 pounds, (3) stand and/or walk with normal breaks for a total of at least two hours in an eight-hour workday, (4) sit with normal breaks for a total of about six hours in an eight-hour workday, and (5) push and/or pull without limitations. Dr. Staples also determined that Clark could occasionally climb, balance, stoop, kneel, crouch, and crawl. Dr. Staples found no manipulative, visual, or communicative limitations. Dr. Staples noted that Clark should avoid concentrated exposure to hazards such as machinery and heights due to his ICD. Dr. Staples summarized that:

> [Clark] has non-ischemic dilated cardiomyopathy, is s/p cardiac arrest, is s/p ICD implantation, is overweight, has diabetes m. type 2, has hypertension and hyperlipidemia under treatment. He would be capable of performing work activities as indicated in the RFC.

---

[3] *See* Administrative Record at 293-94.

[4] *Id.* at 293.

[5] *See* Administrative Record at 294.

(Administrative Record at 322.)

On June 20, 2007, Dr. Philip Laughlin, Ph.D., reviewed Clark's medical records and provided DDS with a Psychiatric Review Technique assessment for Clark. Dr. Laughlin diagnosed Clark with depression. Dr. Laughlin determined that Clark had the following limitations: mild restriction of activities of daily living, mild difficulties in maintaining social functioning, and mild difficulties in maintaining concentration, persistence, or pace. Dr. Laughlin concluded that Clark's condition was "non severe from a mental perspective."[6]

October 17, 2007, Dr. Laura Griffith, D.O., reviewed Clark's medical records and provided DDS with a physical RFC assessment for Clark. Dr. Griffith determined that Clark could: (1) occasionally lift and/or carry 10 pounds, (2) frequently lift and/or carry 10 pounds, (3) stand and/or walk with normal breaks for a total of at least two hours in an eight-hour workday, (4) sit with normal breaks for a total of about six hours in an eight-hour workday, and (5) push and/or pull without limitations. Dr. Griffith also determined that Clark could occasionally climb, balance, stoop, kneel, crouch, and crawl. Dr. Griffith found no visual or communicative limitations, but noted that Clark was limited to occasional reaching over his right shoulder. Dr. Griffith also noted that Clark should avoid even moderate exposure to hazards such as machinery and heights.

On July 1, 2008, Dr. Todd O. Noreuil, M.D., wrote a letter on behalf of Clark, in which he opined:

> [Clark] is a 49-year-old gentleman with severe cardiomyopathy and congestive heart failure. Nevertheless, I admire his spirit, as he has been trying to go to school to further his education. Given the limitations of his heart failure with physical activities, I would certainly think it would be difficult for him to hold any job. Therefore, it is my impression that while going to school, that he not have employment. I would appreciate it if you would understand Mr. Clark's predicament

---

[6] *Id.* at 353.

9

and the severity of his illness and allow him to consider
school, but understand that he cannot work.

(Administrative Record at 446.)

On November 25, 2008, Williams, Clark's counselor, provided Clark's attorney
with an update on Clark's condition. Williams diagnosed Clark with depressive disorder.
Williams noted that Clark's defibrillator had gone off 19 times between May 2007 and
November 2008, each time leaving Clark "anxious, scared and tired." Williams further
noted that Clark has feelings of helplessness and apprehension in not knowing when the
defibrillator will go off again. Williams reported that Clark's lack of knowing when the
defibrillator will go off causes him reluctancy in leaving his home. Williams indicated that
it takes Clark up to three weeks for Clark to feel recovered from having the defibrillator
go off. Lastly, Williams noted that Clark reported trouble remembering things at times.

In June 2009, Clark's underwent placement of a biventricular pacemaker device.
In August 2009, an echocardiogram showed a severely enlarged left ventricular chamber
and severely decreased left ventricular systolic function with mild mitral regurgitation.
Clark's ejection fraction was 20%-25%. However, in an August 2009 patient note,
Dr. Katherine L. Imborek noted that Clark reported that since June 2009, his symptoms
had improved. Specifically, Clark informed Dr. Imborek that he felt less fatigued and he
could walk 3 to 4 blocks and up 1 to 2 flights of stairs without difficulty.

## V. CONCLUSIONS OF LAW

### A. ALJ's Disability Determination

The ALJ determined that Clark is not disabled. In making this determination, the
ALJ was required to complete the five-step sequential test provided in the social security
regulations. *See* 20 C.F.R. § 404.1520(a)-(g); *Bowen v. Yuckert*, 482 U.S. 137, 140-42
(1987); *Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010); *Kluesner v. Astrue*, 607 F.3d
533, 536 (8th Cir. 2010). The five steps an ALJ must consider are:

(1) whether the claimant is currently engaged in any substantial
gainful activity; (2) whether the claimant has a severe

> impairment; (3) whether the impairment meets or equals an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1 ("Appendix"); (4) whether the claimant can return to [his or] her past relevant work; and (5) whether the claimant can adjust to other work in the national economy.

*Moore*, 572 F.3d at 523 (citing 20 C.F.R. § 404.1520(a)(4)(i)-(v)). "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006) (citing *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005), in turn quoting *Eichelberger v. Barnhart*, 390 F.3d 584, 590-91 (8th Cir. 2004)).

In order to establish a disability claim, "[t]he claimant bears the burden of demonstrating an inability to return to [his or] her past relevant work." *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009) (citing *Steed v. Astrue*, 524 F.3d 872, 875 n.3 (8th Cir. 2008)). If the claimant meets this burden, the burden of proof then shifts to the Commissioner to "show [that] the claimant is capable of performing other work." *Id.* In order to show that a claimant is capable of performing other work, the Commissioner must demonstrate that the claimant retains the residual functional capacity ("RFC") to perform a significant number of other jobs in the national economy that are consistent with claimant's impairments and vocational factors such as age, education, and work experience. *Beckley v. Apfel*, 152 F.3d 1056, 1059 (8th Cir. 1998) (citing *Reed v. Sullivan*, 988 F.2d 812, 815 (8th Cir. 1993)). The RFC is the most an individual can do despite the combined effect of all of his or her credible limitations. 20 C.F.R. § 404.1545. "'It is the ALJ's responsibility to determine [a] claimant's RFC based on all the relevant evidence, including medical records, observations of treating physicians and others, and [the] claimant's own description of her limitations.'" *Jones v. Astrue*, 619 F.3d 963, 971 (8th Cir. 2010) (quoting *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007)); 20 C.F.R. § 404.1545.

The ALJ applied the first step of the analysis and determined that Clark had not engaged in substantial gainful activity since February 14, 2007. At the second step, the

ALJ concluded from the medical evidence that Clark had the following severe combination of impairments: non-ischemic cardiomyopathy, obesity, diabetes mellitus (type 2), hypertension, hyperlipidemia, right should capsulitis, chronic systolic heart failure, ventricular arrhythmias, and depression. At the third step, the ALJ found that Clark did not have an impairment or combination of impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. At the fourth step, the ALJ determined Clark's RFC as follows:

> [Clark] has the residual functional capacity to perform sedentary work . . . except he should never climb ropes, ladders, or scaffolding. Similarly, only occasionally should [Clark] climb stairs or ramps, or balance, stoop, kneel, crouch, or crawl. Further, [Clark], who is right-hand dominant, is limited to only occasionally reaching above his shoulder with his right arm. In addition, [Clark] should avoid even moderate exposure to vibrations and hazards such as moving machinery, unguarded heights; he should avoid concentrated exposure to extreme cold and extreme heat. [Clark] should be allowed a sit/stand option at will, defined as standing up but remaining at the work station for 30 to 60 seconds before sitting down again. Finally, [Clark] should not have any driving requirements as part of a job.

(Administrative Record at 13.) Also at the fourth step, the ALJ determined that Clark was capable of performing his past work as a telemarketer and tape verifier. Therefore, the ALJ concluded that Clark was not disabled.

### B. Objections Raised by Claimant

Clark argues that the ALJ erred in three respects. First, Clark argues that he is presumptively disabled because he meets or equals Listing § 4.02 for chronic heart failure, and therefore, the ALJ erred because she did not make such a finding. Second, Clark argues that the ALJ failed to properly consider the opinions of his treating physician, Dr. Noreuil. Lastly, Clark argues that the ALJ's RFC determination was flawed because she failed to consider the number of days he would be absent from a job each month due to ICD discharges.

### 1.    *Listing § 4.02*

At step three of the five-step sequential analysis, an ALJ is required to determine whether a claimant's alleged impairment meets or equals an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. If a claimant's impairment, in fact, meets one of the impairments in the "Listings," then the ALJ must find that he or she is disabled. Clark argues that he is presumptively disabled because he meets or equals Listing § 4.02 for chronic heart failure. Clark maintains that the ALJ's failure to find him disabled based on Listing § 4.02 requires remand for further consideration by the ALJ.

Listing § 4.02 provides in pertinent part:

> 4.02 Chronic heart failure while on a regimen of prescribed treatment, with symptoms and signs described in 4.00D2. The required level of severity for this impairment is met when the requirements of both A and B are satisfied.
>
> > A.    Medically documented presence of one of the following:
> >
> > > 1.    Systolic failure . . . with left ventricular end diastolic dimensions greater than 6.0 cm or ejection fraction of 30 percent or less during a period of stability (not during an episode of acute heart failure); or
> > >
> > > . . .
> >
> > AND
> >
> > B.    Resulting in one of the following:
> >
> > > 1.    Persistent symptoms of heart failure which very seriously limit the ability to independently initiate, sustain, or complete activities of daily living in an individual for whom an MC [(Medical Consultant)] . . . has concluded that the performance of an exercise

> test would present a significant risk to the individual; or
>
> 2.     Three or more separate episodes of acute congestive heart failure within a 12-month period . . . ; or
>
> 3.     Inability to perform on an exercise tolerance test . . .

20 C.F.R. Pt. 404, Subpt. P, App. 1.

It is undisputed that Clark meets both requirements of Listing § 4.02.A.1 with left ventricular end diastolic dimensions greater than 6.0 cm and ejection fraction of less than 30 percent.[7]   The record, however, is devoid of evidence that Clark meets the requirements of Listing § 4.02B.1, 2, or 3.   The Court bears in mind that the "burden of proof is on the plaintiff to establish that his or her impairment meets or equals a listing." *Johnson v. Barnhart*, 390 F.3d 1067, 1070 (8th Cir. 2004) (citing *Sullivan v. Zebley*, 493 U.S. 521, 530-31 (1990)).   In order to meet a listing, "an impairment must meet all of the listing's specified criteria." *Id.*   Here, Clark presents no evidence, and the record contains no evidence that:  (1) a medical consultant has concluded that the performance of an exercise test would present a significant risk to Clark; (2) Clark had three or more separate episodes of acute congestive heart failure within a 12-month period; or (3) Clark has an inability to perform on an exercise tolerance test.   Accordingly, the Court finds that Clark is not presumptively disabled because he has not shown that he meets all of the requirements of Listing § 4.02.[8]   *See Johnson*, 390 F.3d at 1070.

---

[7] *See* Administrative Record at 236 (showing left ventricular end diastolic dimension of 6.4 cm and ejection fraction of 20% on February 14, 2007); 457 (showing left ventricular end diastolic dimension of 7.3 cm and ejection fraction of 15%-20% on October 1, 2008); 500-501 (showing left ventricular end diastolic dimension of 6.7 cm and ejection fraction of 20%-25% on August 4, 2009).

[8] The Court notes that Clark's suggestion that remand is appropriate on this issue
(continued...)

## 2.    Dr. Noreuil's Opinions

Clark argues that the ALJ failed to properly evaluate the opinions of his treating physician, Dr. Noreuil.  Specifically, Clark argues that the ALJ's reasons for discounting Dr. Noreuil's opinions are not supported by substantial evidence on the record.  Clark maintains that this matter should be reversed and remanded for further consideration of the opinions of Dr. Noreuil.

An ALJ is required to "assess the record as a whole to determine whether treating physicians' opinions are inconsistent with substantial evidence on the record." *Travis v. Astrue*, 477 F.3d 1037, 1041 (8th Cir. 2007) (citing 20 C.F.R. § 404.1527(d)(2)).  The opinion of a treating physician:

> should not ordinarily be disregarded and is entitled to substantial weight.  A treating physician's opinion regarding an applicant's impairment will be granted controlling weight, provided the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record.

*Singh v. Apfel*, 222 F.3d 448, 452 (8th Cir. 2000) (citations omitted).

"Although a treating physician's opinion is entitled to great weight, it does not automatically control or obviate the need to evaluate the record as a whole." *Hogan v. Apfel*, 239 F.3d 958, 961 (8th Cir. 2001) (citing *Prosch v. Apfel*, 201 F.3d 1010, 1013 (8th Cir. 2000)).  "The ALJ may discount or disregard such an opinion if other medical assessments are supported by superior medical evidence, or if the treating physician has offered inconsistent opinions." *Id.*; *see also Travis*, 477 F.3d at 1041 ("A physician's statement that is 'not supported by diagnoses based on objective evidence' will not support a finding of disability. *Edwards v. Barnhart*, 314 F.3d 964, 967 (8th Cir. 2003).  If the

---

[8](...continued)
because the ALJ did not specifically address Listing § 4.02 when addressing the Listings in general, is without merit.  *See Karlix v. Barnhart*, 457 F.3d 742, 746 (8th Cir. 2006) (providing that when the record supports the overall conclusion, an ALJ is not required to make mention of, elaborate on, or make findings on a specific listing).

doctor's opinion is 'inconsistent with or contrary to the medical evidence as a whole, the ALJ can accord it less weight.' *Id.*"); *Strongson v. Barnhart*, 361 F.3d 1066, 1070 (8th Cir. 2004) (an ALJ does not need to give controlling weight to a physician's RFC assessment if it is inconsistent with other substantial evidence in the record); *Cabrnoch v. Bowen*, 881 F.2d 561, 564 (8th Cir. 1989) (the resolution of conflicts of opinion among various treating and examining physicians is the proper function of an ALJ).

The regulations also require an ALJ to give "good reasons" for giving weight to statements provided by a treating physician. *See* 20 C.F.R. § 404.1527(d)(2). The regulations also require an ALJ to give "good reasons" for rejecting statements provided by a treating physician. *Id.*; *see also Tilley v. Astrue*, 580 F.3d 675, 680 (8th Cir. 2009) ("The regulations require the ALJ to 'always give good reasons' for the weight afforded to the treating source's opinion.") (citation omitted).

In her decision, the ALJ thoroughly addressed and considered the opinions of Dr. Noreuil. Specifically, the ALJ determined that:

> The undersigned notes that in a letter dated July 1, 2008, Dr. Noreuil wrote the following: 'It is my impression that while he is going to school, that he not have employment.' The opinion of a treating physician, on the issue of the nature and severity of an impairment, is entitled to special significance; and, when supported by objective medical evidence and consistent with other substantial evidence of record, entitled to controlling weight. On the other hand, statements that a claimant is 'disabled', 'unable to work', can or cannot perform a past job, meets a Listing, etc., are not medical opinions but are administrative findings dispositive of a case, requiring familiarity with the Regulations and legal standards set forth therein. Such issues are reserved to the Commissioner[.] . . . Opinions on issues reserved to the Commissioner, such as those of the doctor[] reported above, can never be entitled to controlling weight, but must be carefully considered to determine the extent to which they are supported by the record as a whole or contradicted by persuasive evidence. It is noted that Dr. Noreuil's contemporaneous treatment notes provide no such limitation or

restriction on the claimant's ability to engage in substantial gainful activity (at least no more restriction that [*sic*] covered in the current residual functional capacity). Further, it appears that Dr. Noreuil does not believe the claimant is unable to work, but rather, he does not think the claimant is capable of engaging in both school and work activities simultaneously, an entirely separate issue from the matter at hand. As such, the undersigned affords great weight to the treatment notes of Dr. Noreuil, but only some weight to his opinion on the claimant's ability to engage in substantial gainful activity.

Aside from Dr. Noreuil's opinion, the record does not contain any opinions from treating or examining physicians indicating that the claimant has limitations greater than those determined in this decision. . . .

(Administrative Record at 16-17.)

Having reviewed the entire record, the Court finds that the ALJ properly considered and weighed the opinion evidence provided by Dr. Noreuil. The Court also finds that the ALJ provided "good reasons" for rejecting Dr. Noreuil's opinions. *See* 20 C.F.R. § 404.1527(d)(2); *Strongson*, 361 F.3d at 1070; *Edwards*, 314 F.3d at 967. Accordingly, even if inconsistent conclusions could be drawn on this issue, the Court upholds the conclusions of the ALJ because they are supported by substantial evidence on the record as a whole. *Guilliams*, 393 F.3d at 801.

### 3.    RFC Assessment

Clark argues that the ALJ's RFC assessment is flawed and not supported by substantial evidence. Specifically, Clark argues that the ALJ failed to consider the number of days he would be absent from a job each month due to ICD discharges. Clark maintains that this matter should be remanded for a proper RFC determination.

When an ALJ determines that a claimant is not disabled, he or she concludes that the claimant retains the residual functional capacity to perform a significant number of other jobs in the national economy that are consistent with claimant's impairments and vocational factors such as age, education, and work experience. *Beckley*, 152 F.3d at

1059. The ALJ is responsible for assessing a claimant's RFC, and his or her assessment must be based on all of the relevant evidence. *Guilliams*, 393 F.3d at 803; *see also Roberts v. Apfel*, 222 F.3d 466, 469 (8th Cir. 2000) (same). Relevant evidence for determining a claimant's RFC includes "'medical records, observations of treating physicians and others, and an individual's own description of his [or her] limitations.'" *Lacroix v. Barnhart*, 465 F.3d 881, 887 (8th Cir. 2006) (quoting *Strongson*, 361 F.3d at 1070). While an ALJ must consider all of the relevant evidence when determining a claimant's RFC, "the RFC is ultimately a medical question that must find at least some support in the medical evidence of record." *Casey*, 503 F.3d at 697(citing *Masterson v. Barnhart*, 363 F.3d 731, 738 (8th Cir. 2004)).

The record shows that over 17-month period, from June 2007 to November 2008, Clark's ICD discharged approximately 19 times. The majority of discharges occurred shortly after the ICD was implanted, and doctors were adjusting Clark's medications. There is not medical evidence as to the length of time it took Clark to recover from a discharge. There is also no evidence as to any amount of time Clark might or might not miss if his ICD discharged while he was employed. Furthermore, there is no evidence that Clark missed any school due to the ICD discharging. Accordingly, having reviewed the entire record, the Court finds that the ALJ properly considered Clark's medical records, observations of treating physicians, and Clark's own description of his limitations in making his RFC assessment for Clark.[9] *See Lacroix*, 465 F.3d at 887. The Court further finds that the ALJ's decision is based on a fully and fairly developed record. *See Cox v. Astrue*, 495 F.3d 614, 618 (8th Cir. 2007) (providing that an ALJ also has a duty to develop the record fully and fairly). Because the ALJ considered the medical evidence as a whole, the Court concludes that the ALJ made a proper RFC determination based on a

---

[9] *See* Administrative Record at 14-18 (providing thorough discussion of the relevant evidence for making a proper RFC determination).

fully and fairly developed record, including the fact that Clark has an ICD implant. *See Guilliams*, 393 F.3d at 803; *Cox*, 495 F.3d at 618.

## *VI. CONCLUSION*

The Court finds that the ALJ correctly determined that Clark does not meet all the requirements of Listing § 4.02; the ALJ properly considered and weighed the opinion evidence provided by Dr. Noreuil; and the ALJ's RFC assessment is supported by substantial evidence in the record as a whole. Accordingly, the Court determines that the ALJ's decision is supported by substantial evidence and shall be affirmed.

## *VII. ORDER*

For the foregoing reasons, it is hereby **ORDERED**:

1.     The final decision of the Commissioner of Social Security is **AFFIRMED**;

2.     Plaintiff's Complaint (docket number 3) is **DISMISSED** with prejudice; and

3.     The Clerk of Court is directed to enter judgment accordingly.

DATED this _14th_ day of February, 2011.

_____
JON STUART SCOLES
UNITED STATES MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA